UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| BARBARA B.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:21-cv-00094<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Barbara B.[1] brought this action asking the court to remand the case to the Acting Commissioner of the Social Security Administration (the "Commissioner").[2] The Commissioner determined Ms. B. did not qualify as disabled.[3] Ms. B. contends the Administrative Law Judge ("ALJ") who made this determination legally erred in denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 404–434, 1381–1385.[4] Specifically, Ms. B. argues the ALJ failed in his obligation to account for her limited work pace and persistence—and failed to either account for limitations caused by her panic disorder and her somatoform disorder or to explain why such

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to Plaintiff by her first name and last initial only.

[2] (*See* Pl.'s Opening Br. 1, Doc. No. 28.)

[3] (Certified Tr. of Admin. R. ("Tr.") 26, Doc. No. 18.)

[4] (Pl.'s Opening Br. 1, Doc. No. 28.)

limitations were unnecessary.[5]  Ms. B. also challenges the decision on constitutional grounds, claiming the ALJ lacked authority because the Commissioner's position violates separation-of-powers principles.[6]

After careful review of the entire record and the parties' briefs,[7] the undersigned[8] recommends the district judge affirm the Commissioner's decision.  As a constitutional matter, a new hearing should not be ordered where Ms. B. has not shown the limitation on the President's ability to remove the Commissioner without good cause harmed her case.  And where the ALJ's decision properly accounted for Ms. B.'s limitations, including those related to her panic disorder, somatoform disorder, and work pace, her claims of legal error fail.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner.  In social security appeals, the district court is not the factfinder.[9]  Rather, this court reviews the ALJ's decision and the whole record to determine (1) whether substantial evidence supports the ALJ's factual findings, and (2) whether

---

[5] (*Id.*)

[6] (*Id.* at 15–21.)

[7] The appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.  *See* DUCivR 7-1(g).

[8] On September 2, 2021, the district judge referred this case to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (*See* Doc. No. 15.)

[9] *Cf. Peplinski v. Saul*, 454 F. Supp. 3d 1119, 1124 (D. Kan. 2020).

the ALJ applied the correct legal standards.[10]  The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[11]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[12]  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[13]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[16]  Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

---

[10] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

[11] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[12] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[13] *Id.* at 1154 (internal quotation marks omitted).

[14] *Id.* (internal quotation marks omitted).

[15] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[16] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[17]

The ALJ uses a five-step sequential evaluation to determine whether a claimant qualifies as disabled within the meaning of the Social Security Act.  Specifically, the ALJ considers whether:

1) the claimant presently engages in substantial gainful activity;

2) the claimant has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment listed in the appendix of the relevant disability regulation, which precludes substantial gainful activity;

4) the claimant possesses a residual functional capacity to perform past relevant work; and

5) the claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.[18]

The claimant has the burden, in the first four steps, of establishing the disability.[19]  At step five, the burden shifts to the Commissioner to show the claimant is able to perform other work existing in the national economy.[20]

---

[17] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

**BACKGROUND**

Ms. B. applied for disability insurance benefits and supplemental security income

benefits on October 20, 2017, alleging disability beginning on October 18, 2015.[21]  On July 24,

2020 (following a hearing in June), the ALJ found Ms. B. was not disabled.[22]

The ALJ specifically found Ms. B. had not engaged in substantial gainful activity since

the onset date of her alleged disability.[23]  At step two of the sequential evaluation he concluded

Ms. B. had the severe impairments of right shoulder impingement, degenerative disc disease,

obesity, somatic symptoms disorder, panic disorder, and bipolar disorder.[24]  Upon review of the

record, at step three, the ALJ found Ms. B. had no impairment or combination of impairments

which met or equaled an impairment listing.[25]  In reaching this conclusion, the ALJ found Ms.

B.'s mental impairments primarily caused mild limitations, with moderate limitations only in her

ability to concentrate, persist, or maintain pace.[26]

In light of this, the ALJ determined Ms. B. had the residual functional capacity (RFC)[27]

to perform light work with the following limitations:

> [S]he should have the option to sit or stand at the workstation while remaining on
> task; she can never climb ladders, ropes, or scaffolds; she can frequently climb
> ramps/stairs, stoop, balance, kneel, crouch, and crawl; she can never reach

---

[21] (Tr. 11.)

[22] (*Id.* at 11, 26.)

[23] (*Id.* at 13.)

[24] (*Id.* at 14.)

[25] (*Id.* at 16.)

[26] (*Id.* at 16–17.)

[27] An individual's RFC is the most the individual can do considering his/her/their limitations.  20
C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

overhead with the right upper extremity and can occasionally reach in other directions with the right upper extremity; she can never be exposed to hazards such as moving machinery or working at unprotected heights; and she can perform and persist at work with instructions that can be learned in 1–3 months in an environment with low time and productivity pressures.[28]

Based on this RFC and the testimony of a vocational expert, the ALJ concluded at step four that Ms. B. could not perform any of her past, relevant work.[29]  However, at step five, the ALJ found Ms. B. could perform jobs existing in significant numbers in the national economy, considering her age, education, work experience, and RFC, such "counter clerk," "rental clerk," and "information clerk."[30]  Accordingly, the ALJ found Ms. B. was not disabled.[31]

The Appeals Council denied Ms. B.'s request for review,[32] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. B. makes four claims of error regarding the ALJ's decision.  First, she challenges the ALJ's decision on constitutional grounds, claiming he lacked authority because the Commissioner's position is constitutionally illicit in violation of separation-of-powers principles.[33]  Second, she claims the ALJ legally erred by finding she had a severe panic disorder but failing to account for limitations caused by the disorder (or to explain why such limitations

---

[28] (Tr. 17.)

[29] (*Id.* at 24.)

[30] (*Id.* at 25.)

[31] (*Id.* at 26.)

[32] (*Id.* at 1–7.)

[33] (Pl.'s Opening Br. 15–21, Doc. No. 28.)

are unnecessary).[34]  Third, she claims the ALJ failed to account for her limited ability to concentrate, persist, or maintain pace.[35]  And finally, Ms. B. claims the ALJ failed to properly account for her somatoform disorder.[36]

     1.  <u>Impact of Separation-of-Powers Principles on the ALJ's Decision and Ms. B.'s Claim</u>

Ms. B. argues the statutory structure limiting the President's authority to remove the Commissioner without good cause violates separation-of-powers principles, making the Commissioner's position constitutionally illicit.[37]  According to Ms. B., this deprives the ALJ of legal authority to handle her claim—because the ALJ's power is derived from that of the Commissioner.[38]  The Commissioner contends that even though the statutory removal restriction violates the separation-of-powers doctrine, Ms. B.'s argument fails because she cannot show the removal restriction caused harm to her.[39]  Where Ms. B. has not shown the removal restriction affected her claim, the undersigned recommends the district judge decline to grant relief on these grounds.

As it now stands, the President can only remove the Commissioner upon a finding of "neglect of duty or malfeasance in office."[40]  The parties agree that to the extent this can be

---

[34] (*Id.* at 1.)

[35] (*Id.* at 11.)

[36] (*Id.* at 1.)

[37] (*Id.* at 15–17.)

[38] (*Id.* at 15.)

[39] (Def.'s Answer Br. 4, Doc. No. 33.)

[40] 42 U.S.C. § 902(a)(3).

construed as limiting the President's authority to remove the Commissioner without cause, it violates separation-of-powers principles.[41] But they disagree on the effect of this violation.

Ms. B. argues ALJs have significant power through the Commissioner; they have broad power to decide contested benefits matters (based on regulations promulgated by the Commissioner) and their decisions are subject to deferential review standards.[42] Ms. B. contends this shows the Commissioner is not subject to meaningful supervision. Instead, the Commissioner has unchecked power—where she can both set the rules and dictate how they must be interpreted—in violation of the principles in *Seila Law LLC v. Consumer Financial Protection Bureau*.[43] Ms. B. claims she was directly injured by not receiving constitutionally valid decisions at any step of her claim process.[44] She asks that the case "be remanded for a de novo hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so."[45]

For her part, the Commissioner contends this statutory removal restriction does not require the disability benefits determination to be set aside.[46] The Commissioner relies on *Collins v. Yellen*[47] for the proposition that an unlawful removal provision does not deprive the

---

[41] (*See* Def.'s Answer Br. 4, Doc. No. 33; Pl.'s Opening Br. 15, 17, Doc. No. 28.)

[42] (Pl.'s Opening Br. 18, Doc. No. 28.)

[43] 140 S. Ct. 2183, ___ U.S. ___ (2020).

[44] (Pl.'s Reply Br. 6–7, Doc. No. 34.)

[45] (Pl.'s Opening Br. 20, Doc. No. 28.)

[46] (Def.'s Answer Br. 4, Doc. No. 33.)

[47] 141 S. Ct. 1761, ___ U.S. ___ (2021).

Commissioner of the authority to carry out the responsibilities of her office.[48]  For a removal restriction to have any effect, the injuries alleged (1) must be caused by the officials subject to the removal restrictions and (2) the restrictions themselves must have inflicted harm on the injured party.[49]  The Commissioner argues Ms. B. is unable to establish either prong.[50]  The Commissioner also contends the doctrines of "harmless error" and "de facto officer" prevent Ms. B. from obtaining relief on her constitutional claim—as does the rule of necessity and broad, practical considerations of administrative economy.[51]

The *Collins* case, and its clarification of *Selia Law*, dictates the outcome of this dispute.[52] In *Selia Law*, the Supreme Court held that Article II of the Constitution requires the President to retain authority to remove those who wield executive power on his behalf.[53]  In *Collins*, the Supreme Court applied *Selia Law* to a case involving the Director of the Federal Housing Finance Agency.[54]  The Court explained that an unconstitutional removal restriction does not strip a properly appointed official of the authority to perform the responsibilities of the office.[55] The Court drew a distinction between a challenge based on flaws in an official's appointment and a challenge based on the President's ability to remove the official.  Although an improperly

---

[48] (Def.'s Answer Br. 6, Doc. No. 33.)

[49] (*Id.* (citing *Collins*, 141 S. Ct. at 1789).)

[50] (*Id.* at 7–9.)

[51] (*Id.* at 10–14.)

[52] *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions.")

[53] *Selia Law LLC*, 140 S. Ct. 2183, 2191–92 (2020).

[54] 141 S. Ct. at 1770.

[55] *Id.* at 1788 n.23.

appointed official's acts may be void from the start because they "involve[] a Government actor's exercise of power that the actor did not lawfully possess,"[56] where there is no constitutional defect in the appointment, "there is no reason to regard any of the actions taken by the [agency] . . . as void."[57]  Because of this, to prevail on a claim involving an unlawful removal restriction, the challenger must show she suffered compensable harm due to the President's inability to remove the official at will.[58]

Following this reasoning, district courts across the country have rejected the argument that § 902(a)(3)'s removal restriction requires remand in individual social security cases, based largely on the lack of a showing of compensable harm.[59]  The Ninth Circuit, in *Kauffman v.*

---

[56] *Id.* at 1788.

[57] *Id.* at 1787.

[58] *See id.* at 1789; *see also id.* at 1801 (Kagan, J., concurring) ("[P]laintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision.").

[59] *See, e.g.*, *De Leon v. Kijakazi*, No. 21-508, 2022 U.S. Dist. LEXIS 115718, at *23–29 (D.N.M. June 30, 2022) (unpublished); *Michael H. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1466, 2022 U.S. Dist. LEXIS 45002, at *46–54 (W.D.N.Y. Mar. 14, 2022) (unpublished); *Tucker v. Kijakazi*, No. 21-60943, 2022 U.S. Dist. LEXIS 43763, at *4–7 (S.D. Fla. Mar. 11, 2022) (unpublished); *Juliana Jolean A. v. Kijakazi*, No. 5:20-cv-1268, 2022 U.S. Dist. LEXIS 34955, at *5–12 (N.D.N.Y. Feb. 28, 2022) (unpublished); *Jason V. v. Comm'r of Soc. Sec.*, No. C21-5527, 2022 U.S. Dist. LEXIS 33654, at *13–22 (W.D. Wash. Feb. 25, 2022) (unpublished); *Colbert v. Comm'r of Soc. Sec.*, No. 5:20-cv-2234, 2022 U.S. Dist. LEXIS 32920, at *4–6 (N.D. Ohio Feb. 24, 2022) (unpublished); *Kreibich v. Kijakazi*, No. 20-cv-1045, 2022 U.S. Dist. LEXIS 31486, at *21–24 (W.D. Wis. Feb. 23, 2022) (unpublished); *Taffe v. Kijakazi*, No. 20-cv-1974, 2022 U.S. Dist. LEXIS 31749, at *26–33 (S.D. Cal. Feb. 23, 2022) (unpublished); *Kowalski v. Kijakazi*, No. 3:20-cv-01783, 2022 U.S. Dist. LEXIS 31107, at *26–36 (M.D. Pa. Feb. 22, 2022) (unpublished); *Twila D.B. v. Kijakazi*, No. 2:20-cv-6304, 2022 U.S. Dist. LEXIS 25198, at *4–9 (C.D. Cal. Feb. 10, 2022) (unpublished); *Pepper v. Kijakazi*, No. 6:20-cv-4159, 2022 U.S. Dist. LEXIS 23202, at *5–9 (D.S.C. Feb. 9, 2022) (unpublished); *Rhonda W. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5931, 2022 U.S. Dist. LEXIS 22922, at *19–26 (S.D. Ohio Feb. 9, 2022) (unpublished); *Vickery v. Comm'r of Soc. Sec.*, No 5:21-cv-122, 2022 U.S. Dist. LEXIS 15181, at *6–14 (M.D. Fla. Jan. 26, 2022) (unpublished); *Carla D. v. Kijakazi*, No. 2:20-cv-361, 2022 U.S. Dist. LEXIS 15299, at *3–7 (E.D. Wash. Jan. 27, 2022) (unpublished); *Ramos v. Comm'r of*

*Kijakazi*,[60] recently concluded the separation-of-powers problem in § 902(a)(3) did not void a social security disability finding.  For the separation-of-powers problem to be actionable, the Ninth Circuit found the challenging party must show "how the unconstitutional removal provision *actually harmed* the party."[61]  The party would have to show, for example, that "the President would have removed the agency's head" or that the agency's head "might have altered his behavior in a way that would have benefitted" the party but for the provision.[62]  In *Kauffman*, the court concluded the plaintiff did not show the removal provision caused her harm.  For instance, she failed to show "that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority."[63]

Ms. B. has also failed to show a nexus between any compensable harm and the statutory removal restriction.  The injuries Ms. B. claims—that she was subjected to a constitutionally invalid process at every stage—apply to every single social security disability claimant.  These

---

*Soc. Sec.*, No 1:20-cv-01606, 2022 U.S. Dist. LEXIS 5721, at *5–10 (E.D. Cal. Jan. 10, 2022) (unpublished); *Nudelman v. Comm'r of Soc. Sec.*, No. CV-20-08301, 2022 U.S. Dist. LEXIS 5358, at *34–43 (D. Ariz. Jan 11, 2022) (unpublished); *Olimpiada v. Kijakazi*, No. 2:21-cv-00196, 2022 U.S. Dist. LEXIS 183, at *12–14 (D. Nev. Jan. 3, 2022) (unpublished); *Wybo v. Kijakazi,* No. 20-518,  2021 U.S. Dist. LEXIS 243012, at *8–10 (E.D. Ky. Dec. 21, 2021) (unpublished); *Nathaniel H. v. Kijakazi*, No. 6:19-cv-01280, 2021 U.S. Dist. LEXIS 239561, at *11–17 (D. Or. Dec. 15, 2021) (unpublished); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 U.S. Dist. LEXIS 219655, at *50–52 (D. Neb. Nov. 15, 2021) (unpublished); *Robinson v. Kijakazi,* No. 1:20-cv-00358, 2021 U.S. Dist. LEXIS 206914, at *5–7 (W.D.N.C. Oct. 27, 2021) (unpublished).

[60] 32 F.4th 843 (9th Cir. 2022).

[61] *Id.* at 849.

[62] *Id.*

[63] *Id.* at 849–50.

injuries do not show Ms. B. suffered individual, compensable harm as a result of the invalid removal restriction.  And Ms. B. has not alleged, for example, that the outcome of her case contravened the President's policy preferences in way that implicated the President's ability to control who works for him.  There is no indication Ms. B.'s claim would have been decided differently but for the removal provision.  Ms. B. has simply shown no connection between the removal provision and the ALJ's denial of her specific benefits claim.

In her reply, Ms. B. cites *Tafoya v. Kijakazi*[64] for the proposition that the unlawful removal restriction deprived the ALJ of constitutional authority, rendering his determination void.  But the *Tafoya* court only addressed standing.[65]  And the traceability element for Article III standing requires only that a plaintiff show her injury "is fairly traceable to the defendant's conduct."[66]  This inquiry does not look to the specific provision of law being challenged.[67]  The compensable harm question for relief based on unconstitutional removal restrictions is more focused than this traceability standard to establish standing.  It requires a direct link between the injury alleged and the removal restriction.[68]  For this reason, cases only addressing standing lack persuasive value on the question of whether Ms. B. suffered compensable harm due to the removal restriction.

---

[64] 551 F. Supp. 3d 1054 (D. Colo. 2021).

[65] *See id.* at 1059 ("[T]he question presently before me is one of standing, and thus does not implicate the merits.").

[66] *Collins*, 141 S. Ct. at 1779 (internal quotation marks omitted).

[67] *Id.*

[68] *See id.* at 1788–89.

Even if Ms. B. were able to establish the invalid removal restriction caused compensable harm, her argument fails.  The ALJ who decided her case had his appointment ratified in July 2018 by then-Acting Commissioner Nancy Berryhill.[69]  As Acting Commissioner, Ms. Berryhill had no statutory tenure protection and was not appointed subject to the removal restriction.[70]  As observed in *Tafoya*, "the current Acting Director undoubtedly is aware that she serves at the pleasure of the President.  This in itself may be enough to undo plaintiff's constitutional argument . . . ."[71]

Where it is apparent Ms. B. has not met the *Collins* standard by showing she suffered compensable harm due to the statutory removal restriction, the Commissioner's other arguments (harmless error, de facto officer doctrine, rule of necessity, and other prudential considerations) are not addressed.

2.   Ms. B.'s Claims of Error Regarding the ALJ's Assessment of Her RFC

Ms. B. next argues the ALJ erred in his treatment of Ms. B.'s mental impairments by (1) failing to account for limitations caused by her panic disorder or to explain why such limitations were unnecessary, (2) failing to address an evaluator's findings as to Ms. B.'s limited work pace, and (3) failing to account for limitations caused by her somatoform disorder or to explain why

---

[69] (Def.'s Answer Br. 6 n.5, Doc. No. 33.)

[70] *See* 42 U.S.C. § 902(a)(1) (discussing requirement that Commissioner be appointed by the President, by and with the advice and consent of the Senate); *see also Collins*, 141 S. Ct. at 1782 (noting the Acting Director of the Federal Housing Finance Agency was removable at will because the relevant "subsection does not include any removal restriction.  Nor does it cross-reference the earlier restriction on the removal of a confirmed Director" (internal citation omitted)).

[71] 551 F. Supp. 3d at 1059 n.6; *cf. Collins*, 141 S. Ct. at 1781 ("[I]f the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation.").

such limitations were unnecessary.[72]   The Commissioner responds by asserting the ALJ

adequately accounted for the limitations related to these impairments in the RFC finding.[73]

     *A.*     *Panic Disorder*

     Ms. B. contends the ALJ did not adequately account for the functional limitations caused

by her panic attacks in the RFC finding—or to explain why specific limitations were not

necessary.[74]   Specifically, she argues the ALJ erroneously concluded Craig K. Swaner, Ph.D.,

provided "no opinion" regarding panic attacks, even though he found Ms. B. had panic episodes

in unfamiliar situations or when faced with conflict.[75]   She also points to medical records

indicating her panic attacks sometimes made it hard for her leave her home.[76]   Ms. B. contends

that because the ALJ found her panic disorder to be a severe impairment, he needed to account

for the omission of panic-related limitations in the RFC.[77]   His failure to do so constitutes legal

error, according to Ms. B.[78]   The Commissioner argues the ALJ properly considered Ms. B.'s

panic attacks and, in view of her medical records, correctly found they were not functionally

limiting.[79]   The Commissioner asserts the ALJ's characterization of Dr. Swaner's report was

---

[72] (Pl.'s Opening Br. 7–8, Doc. No. 28.)

[73] (Def.'s Answer Br. 14, Doc. No. 33.)

[74] (Pl.'s Opening Br. 8–11, Doc. No. 28.)

[75] (*Id.* at 8–9.)

[76] (*Id.* at 8.)

[77] (*Id.* at 10.)

[78] (*Id.* at 10–11.)

[79] (Def.'s Answer Br. 15–16, Doc. No. 33.)

correct.[80]  According to the Commissioner, Ms. B's arguments about the effects of the panic

attacks reflect speculation only.[81]

When a claimant establishes the existence of a severe mental impairment that does not

meet the listed impairments, the ALJ must evaluate it "in combination with the effects of other

impairments."[82]  An RFC requires consideration of work capacities which can be affected by

severe mental disorders that do not meet or equal the severity of a listed disorder.[83]  In assessing

an RFC, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence

in the case record were considered and resolved."[84]  And "[i]f the RFC assessment conflicts with

an opinion from a medical source, the adjudicator must explain why the opinion was not

adopted."[85]  The classifications in step three of the sequential analysis (including Ms. B.'s severe

panic disorder) "are not an RFC assessment."[86]  Instead, they "are used to rate the severity of

mental impairments."[87]  It is the RFC assessment at steps four and five that require a detailed

assessment of functional limitations based on those impairments.[88]  In his RFC assessment, "the

---

[80] (*Id.* at 17.)

[81] (*Id.*)

[82] *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991).

[83] *See* 20 C.F.R. Part 404, Subpart P, App. I.

[84] Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *19.

[85] *Id.* at *20.

[86] *Id.* at *13.

[87] *Id.*

[88] *See id.*

ALJ must consider the combined effect of all medically determinable impairments, whether severe or not."[89]

In this case, the ALJ did consider the combined effects of all Ms. B.'s impairments, and he incorporated these considerations into his RFC assessment.  And the ALJ properly considered Dr. Swaner's report.  The ALJ noted Dr. Swaner diagnosed Ms. B. with panic disorder, among other things.[90]  He also observed Dr. Swaner offered to no opinion because he did not provide a functional assessment of Ms. B.'s maximum mental abilities.[91]  Looking at Dr. Swaner's report, this is true.  A medical opinion is medical source's statement about whether a claimant has impairment-related limitations.[92]  Dr. Swaner did not opine that Ms. B.'s panic attacks caused any functional limitations.  He reported that Ms. B. was cooperative, had a positive affect, and her attention and concentration were within normal limits.[93]  Dr. Swaner observed Ms. B. was generally independent in her community mobility and self-help skills and completed activities of daily living successfully, despite some difficulties with mood, impulsivity, distractibility, and anxiety.[94]  He also observed that Ms. B. managed with no prescription medications, she was not participating in mental health treatment, and had never been hospitalized for psychiatric reasons.[95]  And Dr. Swaner noted Ms. B.'s self-report that "her medical condition [was] her

---

[89] *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (emphasis omitted).

[90] (Tr. 23.)

[91] (*Id.*)

[92] *See* 20 C.F.R. § 416.913(a)(2); 20 C.F.R. § 404.1513(a)(2).

[93] (Tr. 1998–99.)

[94] (*Id.* at 1994–99.)

[95] (*Id.* at 1995–96.)

primary disability" and her mental health issues were not "disabling in their own right."[96]
Although Dr. Swaner observed Ms. B. had "some difficulty" with "panic episodes in unfamiliar
situations and with conflict,"[97] nowhere did he opine whether or how this difficulty functionally
limited Ms. B.  The ALJ correctly characterized Dr. Swaner's report as lacking a medical
opinion due to this lack of a functional assessment detailing impairment-related limitations.

Ms. B. argues absenteeism "can be inferred" from her impairments, and the ALJ erred by
failing to account for this.[98]  Specifically, she contends she "would experience absences from
work" because her panic attacks prevented her from leaving home,[99] and even minimal effects
from her panic attacks "could preclude all work."[100]  But the record lacks evidence supporting
the claim that Ms. B.'s panic attacks would cause absenteeism sufficient to interfere with her
ability to work.  As noted above, Dr. Swaner observed Ms. B. had some difficulty with panic
attacks in unfamiliar situations or with conflict.  But this statement is unmoored from any finding
of limitations caused by the panic attacks.  Dr. Rosemarie Carlson noted Ms. B.'s self-report that
panic attacks sometimes made it difficult for her to leave home.[101]  But there is no indication that
"sometimes" is enough to infer absenteeism from work.  Dr. Carlson also observed that "mental
health information during the relevant time frame is sparse"[102] and Ms. B. "focused mostly on

---

[96] (*Id.*)

[97] (*Id.* at 1998.)

[98] (Pl.'s Opening Br. 13, Doc. No 28.)

[99] (*Id.* at 9.)

[100] (*Id.* at 14.)

[101] (Tr. 149.)

[102] (*Id.* at 150.)

her physical problems and limitations."[103]   Moreover, the limitations Dr. Carlson found were incorporated into the ALJ's RFC assessment.[104]   Ms. B. has not pointed to any other record evidence supporting a finding (or even an inference) that her panic attacks would cause absenteeism sufficient to interfere with work.

It is apparent from the ALJ's decision that he addressed Ms. B.'s panic attacks but found insufficient evidence of functional impairment in the record.   And the ALJ's findings regarding Ms. B.'s panic attacks are substantially supported by the record as a whole.   For instance, exactly the same note about Ms. B.'s history of panic attacks was imported or copied into many records, but the statement was last updated in October 2016.[105]   Ms. B.'s specific treatment records indicate her panic attacks were "[o]ccasional."[106]   And her medical records are largely devoid of documented instances of panic attacks—other than a January 2017 report that her most recent incident was in September 2016.[107]   Additionally, the record supports the ALJ's finding that Ms. B.'s panic attacks (and other mental health symptoms) were largely stable with treatment.[108]

Finally, Ms. B.'s argument fails because she did not identify any additional limitations which should have been included in the RFC assessment, or point to support for any additional

---

[103] (*Id.* at 149.)

[104] (*Id.* at 17, 22.)

[105] (*See, e.g.*, *id.* at 678, 686, 693, 698, 702, 708, 711, 719.)

[106] (*Id.* at 716.)

[107] (*Id.* at 718.)

[108] *See id.* at 22–23; *see also id.* at 161–62 (summarizing record showing effectiveness of treatment and medication), 716 (noting medications for panic attacks), 1006 (noting effect of medication for panic attacks), 1987 (observing medication helps for panic attacks).

limitations in the record.[109]  Overall, there appears to be no record support for the addition of panic-attack related limitations in the RFC and the ALJ's factual findings are supported by substantial evidence.  For these reasons, Ms. B.'s arguments as to her panic attacks fail.

> B.      *Limited Work Pace*

Next, Ms. B. argues the ALJ failed to account for how her moderate limitations in concentration, persistence, or maintaining pace, affected her ability to work.[110]  Ms. B. points to Dr. Carlson's findings that her limitations in this area were moderate, and argues Dr. Carlson failed to address how these limitations might affect Ms. B.'s ability to complete a normal workday or workweek.[111]  According to Ms. B., Dr. Carlson's failure to account for the effect of these moderate limitations in her narrative report (her failure to show how, despite these limitations, Ms. B. could maintain concentration, persistence, and pace for two-hour periods in an eight-hour day, forty hours a week), obligates the ALJ to reject her report for purposes of his RFC finding.[112]  Ms. B. contends the ALJ erred by not addressing this.[113]

---

[109] *See* Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *2 (noting that when there is no specific functional limitation is alleged, and there is no record evidence supporting a limitation, "the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity"); *see also McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (unpublished) (upholding RFC assessment where the claimant did not identify additional limitations which should have been included, supported by the record).

[110] (Pl.'s Opening Br. 11, Doc. No. 28.)

[111] (*Id.* at 11–12.)

[112] (*Id.* at 12.)

[113] (*Id.* at 12–13.)

The Commissioner argues Dr. Carlson's assessment and findings were consistent with the record as a whole.[114]  According to the Commissioner, there is no requirement that the moderate limitations noted in section one of the Mental RFC worksheet[115] be addressed in the narrative section of the report or the ALJ's RFC assessment.[116]  The Commissioner contends the ALJ was correct to rely on Dr. Carlson's narrative findings (the formal assessment of Ms. B.'s mental impairments).[117]  The Commissioner maintains the RFC finding is consistent with moderate limitations anyway, because the ALJ limited Ms. B. (1) to semi-skilled work (accounting for her limited ability to maintain attention and concentrate for an extended period), and (2) to work with low time and productivity pressures (accounting for her limited ability to complete a normal workday or workweek without interruptions from symptoms—and to perform at a consistent pace).[118]  Finally, the Commissioner observes that Ms. B. failed to explain how the RFC limitations are insufficient to account for her mental impairments.[119]

At the outset, Dr. Carlson's findings are not internally inconsistent.  Ms. B. relies on *Carver v. Colvin*[120] for the proposition that where a consultant's narrative fails to describe the effect each moderate limitation would have on the claimant's ability (or contradicts those

---

[114] (Def.'s Answer Br. 19, Doc. No. 33.)

[115] (*See* Tr. 148–49.)

[116] (Def.'s Answer Br. 20, Doc. No. 33.)

[117] (*Id.*)

[118] (*Id.* at 21–22.)

[119] (*Id.* at 22.)

[120] 600 F. App'x 616 (10th Cir. 2015) (unpublished).

limitations), the report cannot be considered in the ALJ's RFC analysis.[121]  But Dr. Carlson's narrative did describe the effect of each limitation, consistently.  After making the general findings that Ms. B. was moderately limited in her ability to maintain attention and concentration for extended period—and in her ability to complete a normal workday without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods—Dr. Carlson explained precisely what those findings meant for purposes of Ms. B.'s abilities.[122]  She explained that Ms. B. had adequate attention and concentration, even if moderately limited.[123]  She also opined that Ms. B. was capable of sustaining concentration, persistence and pace for two-hour periods across an eight hour day, forty hours a week, in settings without high productivity requirements or strict deadlines.[124]  Ms. B. has failed to show how a moderate limitation in these areas is inconsistent with the functional abilities Dr. Carlson found and the ALJ adopted.

Likewise, the ALJ's findings regarding Ms. B.'s concentration, persistence, pace, and attention at step three of the sequential analysis are consistent with moderate limitations— exactly as outlined by Dr. Carlson.[125]  Under social security regulations, "moderate" is defined to mean the claimant's functioning "independently, appropriately, effectively, and on a sustained

---

[121] (Pl.'s Opening Br. 12, Doc. No. 28); *see also Carver*, 600 F. App'x at 619.

[122] (Tr. 149.)

[123] (*Id.*)

[124] (*Id.*)

[125] (*Id.* at 17, 149.)

basis is fair."[126]  An ALJ's findings of "moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment."[127]  It is between steps three and four, at the RFC assessment (which is more detailed), that the ALJ determines whether any record evidence supports a finding that these moderate limitations cause work-related functional limitations.

In this case, the ALJ cited substantial evidence supporting his RFC findings on this point. The ALJ based the functional limitations in his RFC finding on a determination that Ms. B.'s statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the medical evidence, her prescribed treatment, or her activities of daily living.[128]  Among other things, he relied on records showing Ms. B.'s mental health symptoms were stable with treatment and her mental status exams were unremarkable.[129]  And the ALJ also based his findings, in part, on Dr. Carlson's opinion, which he found persuasive.[130]  In his RFC assessment, the ALJ accounted for Ms. B.'s moderate concentration, persistence, attention, and pace problems by limiting her to work which can be learned in one to three months, and work

---

[126] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c); *see also Fannin v. Comm'r, Soc. Sec. Admin.*, 857 F. App'x 445, 446 n.3, 448 (10th Cir. 2021).

[127] *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *see also Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) (finding ALJ was under no obligation to include functional limitations in claimant's RFC based on the finding that she had moderate limitations in a given area); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same).

[128] (Tr. 18, 21.)

[129] (*Id.* at 21 (citing *id.* at 677, 731, 801, 855, 886, 969, 973, 977, 1171, 2081, 2092, 2096, 2100, 2102, 2107, 2175, 2177, 2211); *see also id.* at 1013, 1998.)

[130] (*Id.* at 22; *see also id.* at 149–50.)

with low time and productivity pressures.[131]  This adequately addresses Ms. B.'s impairments and her moderate limitations.[132]

Significantly, Ms. B. fails to point to evidence in the record which would tend to show either the ALJ's findings on this point, or Dr. Carlson's opinion, are unsupported.  Without this, Ms. B. cannot establish that the RFC limitations inadequately accounted for her mental impairments.[133]  The ALJ properly accounted for how Ms. B.'s moderate limitations in attention, concentration, persistence, and maintaining pace affected her ability to work.  The ALJ's RFC finding is consistent, well-explained, and supported by the record—as is Dr. Carlson's opinion.

C.    *Somatoform Disorder*

Lastly, Ms. B. argues the ALJ failed to adequately account for the severity of her somatoform disorder.[134]  In support of this claim, Ms. B. relies on her own hearing testimony, and again relies on Dr. Swaner's report.[135]  She contends the ALJ's finding that her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent

---

[131] (*Id.* at 17.)

[132] *Cf. DeFalco-Miller v. Colvin*, 520 F. App'x 741, 744 (10th Cir. 2013) (unpublished) ("The ALJ fashioned an RFC for semi-skilled light work, subject to moderate limitations in (1) maintaining concentration and attention for extended periods and (2) responding appropriately to work setting changes."); *McDonald v. Astrue*, 492 F. App'x 875, 878 (10th Cir. 2012) (unpublished) (affirming decision including RFC for semi-skilled work for a claimant with moderate limitations).

[133] *See, e.g.*, *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("[The claimant] cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the 'moderate' designation; he must have evidence of that need, and he cites none.")

[134] (Pl.'s Opening Br. 14–15, Doc. No. 28.)  "A somatoform disorders exists when there are physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms."  *Tolbert v. Chater*, 1997 U.S. App. LEXIS 2287, at *4 n.2 (10th Cir. 1997) (unpublished) (internal quotations marks omitted).

[135] (Pl.'s Opening Br. 14, Doc. No. 28.)

with the record ignored the effect of her somatoform disorder.[136]  The Commissioner responds

that the ALJ properly considered the effect of Ms. B.'s somatoform disorder and assessed it in

his RFC analysis.[137]

It is clear from the ALJ's decision that he accounted for Ms. B.'s somatoform disorder.

In his analysis at step three, the ALJ recognized Ms. B.'s "somatic symptom disorder" as a

severe impairment.[138]  Generally, an ALJ's statement that he has considered a matter is accepted

on its face.[139]  And in this case, the ALJ discussed Ms. B.'s somatoform disorder at multiple

points in his decision and supported his findings with record evidence.

First, the ALJ discussed Ms. B.'s diagnoses of the disorder and considered it in assessing

her RFC.[140]  He also recognized her somatic symptoms may have contributed to her pain

complaints.[141]  For instance, the ALJ noted Ms. B.'s neck and back pain might be "exacerbated

by obesity and somatic symptom disorder."[142]  The ALJ went on to consider Ms. B.'s

somatoform disorder in light of the record evidence.  Despite her somatoform disorder, Ms. B.

was fairly active, reporting exercising regularly.[143]  At one point, she noted she was "doing

---

[136] (*Id.* at 14–15.)

[137] (Def.'s Answer Br. 22–23, Doc. No. 33.)

[138] (Tr. 14.)

[139] *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

[140] (Tr. 14, 21, 22, 23.)

[141] (*Id.* at 21–23.)

[142] (*Id.* at 22.)

[143] (*Id.* at 22 (citing *id.* at 1117, 2100); *see also id.* at 68, 899.)

pretty well with respect to her right shoulder" and she later denied any issues with it.[144]  The ALJ noted, since September 2019, Ms. B. was living alone and independently performing activities of daily living.[145]  And the ALJ noted only occasional complaints of back and neck pain with little evaluation or treatment for symptoms after October 2016.[146]  Moreover, the ALJ's RFC finding included limitations to account for pain—such as limitations regarding Ms. B.'s upper right extremity.[147]  The record evidence supports the ALJ's findings regarding Ms. B.'s somatic disorder.  The ALJ considered Ms. B.'s somatic complaints and diagnosis fully, and substantial evidence supports his findings.

<u>RECOMMENDATION</u>

Because Ms. B.'s constitutional argument fails and because substantial evidence supports the ALJ's findings as to Ms. B.'s panic disorder, somatoform disorder, and other limitations, the undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision.

The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object to it.  Any objections to this Report and Recommendation must be

---

[144] (*Id.* at 22 (citing *id.* at 2090, 2100).)

[145] (*Id.* at 20, 22 (citing *id.* at 1994, 2100).)

[146] (*Id.* at 20; *see also id.* at 425, 673, 2078.)

[147] (*Id.* at 17.)

filed within fourteen (14) days of service.[148]  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 29th day of July, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---