THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BARBARA B.,<br><br>                      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>                      Defendant. | **ORDER**<br>• **ADOPTING [35] REPORT AND RECOMMENDATION**<br>• **OVERRULING [36] PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**<br><br>Case No. 1:21-cv-00094-DBB-DAO<br><br>District Judge David Barlow |

Before the court is the Report and Recommendation of United States Magistrate Judge Daphne A. Oberg reviewing the decision of the Acting Commissioner of the Social Security Administration to deny disability benefits to Barbara B.[1] Magistrate Judge Oberg recommends this court affirm the Commissioner's denial of benefits.[2] Judge Oberg notified the parties of their right to file objections to the Report and Recommendation within 14 days of its service pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).[3] Plaintiff Barbara B. ("Plaintiff") filed an objection on August 12, 2022.[4] The Commissioner responded on August 22, 2022.[5] For the reasons set forth below, the court overrules Plaintiff's Objection, adopts the Magistrate Judge's Report and Recommendation, and affirms the Commissioner's denial of benefits.

---

[1] Report and Recommendation (R. & R.), ECF No. 35, filed July 29, 2022. To protect Plaintiff's privacy, the court refers to Plaintiff by her first name and last initial only.
[2] R. & R., ECF No. 35.
[3] *Id.* at 25–26.
[4] Objection to Report and Recommendation (Objection), ECF No. 36, filed August 12, 2022.
[5] Response to Objection to Report and Recommendation, ECF No. 37, filed August 22, 2022.

1

## PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, on October 20, 2017.[6] Plaintiff alleged disability beginning October 18, 2015.[7] The Social Security Administration denied Plaintiff's claims initially and upon reconsideration.[8] As a result, Plaintiff filed a written request for a hearing on September 29, 2019, and Administrative Law Judge (the "ALJ") Jeffrey Mason held a hearing.[9]

On July 24, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled as defined in the Social Security Act and denying disability benefits.[10]

The Social Security Administration Appeals Council denied Plaintiff's request for review,[11] and therefore the decision of the ALJ constitutes the final decision for purposes of this appeal.[12]

## STANDARD OF REVIEW

### I.  District Court Review

When resolving objections to a Report and Recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[13] The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[14]

---

[6] Administrative Record (R.) at 11, ECF No. 18, filed October 6, 2021.
[7] Id.
[8] Id.
[9] Id.
[10] Id. at 11–26.
[11] Id. at 1–4.
[12] See 20 C.F.R. § 416.1481.
[13] 28 U.S.C. § 636(b)(1)(C) (2018).
[14] Id.

## II.   Disability Determination

The ALJ uses a five-step sequential evaluation to determine whether a claimant qualifies as disabled within the meaning of the Social Security Act. Specifically, the ALJ considers whether: (1) the claimant presently engages in substantial gainful activity; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the impairment is equivalent to an impairment listed in the appendix of the relevant disability regulation, which precludes substantial gainful activity; (4) the claimant possesses a residual functional capacity to perform past relevant work; and (5) the claimant possesses a residual functional capacity to perform other work in the national economy considering the claimant's age, education, and work experience.[15]

Step four "is comprised of three phases."[16] "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), ... and in the second phase, [the ALJ] must determine the physical and mental demands of the claimant's past relevant work.... In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."[17]

"The standard of review in a Social Security appeal is whether the [ALJ's] final decision is supported by substantial evidence, and whether [the ALJ] applied the correct legal standards."[18] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] While "this 'threshold

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[16] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).
[17] *Id.* (quoting *Winfrey*, 92 F.3d at 1023) (alterations in original).
[18] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . [and] the court shall review only the question of conformity with such regulations and the validity of such regulations.").
[19] *Grogan*, 399 F.3d at 1261 (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).

for ... evidentiary sufficiency is not high,'"[20] "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."[21]

To determine whether the ALJ met this standard, "we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings."[22] However, in conducting this limited form of de novo review, "[w]e are mindful that we may neither reweigh evidence nor substitute our judgment for the Commissioner's."[23] Therefore, "[a]lthough the evidence may also have supported contrary findings, '[w]e may not displace the agency's choice between two fairly conflicting views.'"[24]

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§404.1520 and 416.920.

As is relevant here, at step two in the disability determination, the ALJ found that Plaintiff had six severe impairments, including panic disorder, somatic symptom disorder, and bipolar II disorder.[25]

At step three, the ALJ determined these impairments, individually and combined, were not of a severity that met or medically equaled the criteria of a listed impairment.[26] Specifically, Plaintiff had three mild impairments due to her mental impairments: in understanding,

---

[20] *Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 839 (10th Cir. 2020) (unpublished) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).
[21] *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).
[22] *Grogan*, 399 F.3d at 1262 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).
[23] *Trujillo*, 818 F. App'x at 839 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight." (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007))).
[24] *Oldham*, 509 F.3d at 1257–58 (quoting *Lax*, 489 F.3d at 1084).
[25] R. at 14.
[26] *Id.* at 16–17.

remembering, or applying information; in interacting with others; and adapting or managing herself.[27] She had one moderate impairment in concentrating, persisting, or maintaining pace.[28]

In phase one of step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), the "most the claimant is able to perform on a sustained and consistent basis."[29] After "a careful review of the entire record,"[30] the ALJ determined Plaintiff "has the residual functional capacity to perform light work . . . and she can perform and persist at work with instructions that can be learned in 1–3 months in an environment with low time and productivity pressures."[31] In making this assessment, he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[32]

During his discussion of Plaintiff's RFC, the ALJ noted that "in [Plaintiff's] function report, she stated as follows in terms of how her conditions limit her ability to work . . . . [s]he has panic attacks and it is extremely difficult to leave her house."[33] After listing Plaintiff's reported symptoms, he observed that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record."[34] He spent a paragraph detailing the evidence of Plaintiff's mental symptoms, noting that her mental status exams during the period at issue were typically unremarkable, that she took medications for depression and anxiety, and that her mental symptoms have been "largely stable with treatment."[35]

---

[27] R. at 16–17.
[28] *Id.* at 17.
[29] *Id.* at 21.
[30] *Id.*
[31] *Id.* at 17.
[32] *Id.*
[33] *Id.* at 18.
[34] *Id.*
[35] *Id.* at 21, 23.

The ALJ also discussed Dr. Carlson's report at length in his RFC assessment.[36] Dr. Carlson is a state agency psychological consultant who opined on Plaintiff's mental limitations.[37] Dr. Carlson found that Plaintiff is "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[38] Dr. Carlson opined that while Plaintiff "appears to have adequate attention/concentration[, . . .] she is likely to have difficulty sustaining CP&P over an extended duration of time . . . due to her distractibility, sxs of hypomania, limited stress tolerance, and her focus upon and distress about her physical pain. . . . Overall, [Plaintiff] is capable of sustaining CP&P for 2 hour periods across an 8 hour day/40 hour week in a setting that does not include high productivity requirements or strict deadlines."[39] Dr. Carlson observed that although Plaintiff reported "occasional panic attacks," Plaintiff "is able to drive, go out alone, shop in stores, manage money, watch documentaries, and make jewelry."[40] She noted that Plaintiff believed her "mental health issues were not disabling in their own right."[41] Dr. Carlson concluded that Plaintiff "has severe psych impairments that do not meet or equal a listing. . . . She has some limitations for CP&P, but she retains sufficient residual capacity, from a mental health perspective, to perform and persist at instructions that can be learned in 1–3 months in an environment with low time and productivity pressure."[42] The ALJ articulated that he found Dr. Carlson's report persuasive, consistent, and supported with reference to medical and other evidence.[43]

---

[36] R. at 22.
[37] *Id.*
[38] *Id.* at 149.
[39] *Id.*
[40] *Id.* at 149–50.
[41] *Id.* at 22.
[42] *Id.* at 150.
[43] *Id.* at 22.

The ALJ discussed Dr. Swaner's report in his RFC assessment as well, in a section that began with his assertion that he had "fully considered the medical opinions and prior administrative medical findings as follows[.]"[44] The ALJ observed that Dr. Swaner is a consultative evaluating psychologist who diagnosed Plaintiff with somatic symptom disorder, panic disorder, and bipolar II disorder.[45] The ALJ noted that "Dr. Swaner did not provide a functional assessment of [Plaintiff's] maximum mental abilities, only describing [Plaintiff's] performance on [a] mental status exam at that time" and that "[t]herefore, there is no opinion from Dr. Swaner to consider."[46]

II.     **The ALJ Properly Considered the Evidence Concerning Plaintiff's Panic Disorder When He Considered Dr. Swaner's Report and Articulated His Evaluation of the Credibility of Plaintiff's Self-Reported Symptoms.**

Plaintiff contends the ALJ "did not properly consider all the evidence . . . regarding [Plaintiff]'s panic," because the ALJ "did not consider Dr. Swaner's findings."[47] In support, Plaintiff points to a sentence in the ALJ's decision noting "there is no opinion from Dr. Swaner to consider" and argues this means the ALJ did not consider Dr. Swaner's report at all.[48] Plaintiff then points to specific statements that Plaintiff made to Dr. Swaner about her symptoms and contends that because Dr. Swaner recorded Plaintiff's statements in his report, Dr. Swaner "suggested that [Plaintiff]'s panic would be exacerbated by unfamiliar situations and conflict."[49] Plaintiff argues that the ALJ had a duty to "translate medical findings into the [RFC assessment]" and yet "nothing in the ALJ's decision addressed this evidence."[50]

---

[44] R. at 23.
[45] *Id.*
[46] *Id.*
[47] Objection 7.
[48] *Id.* at 7.
[49] *Id.* at 5–6.
[50] *Id.* at 6.

7

After finding a severe impairment at step three, "the ALJ [has] the task of determining the extent to which [claimant's] impairments ... restricted [the claimant's] ability to work."[51] The ALJ "must consider all relevant medical evidence" in his decision[52] and "[t]he record must demonstrate that the ALJ considered all of the evidence."[53] This is not a requirement to "discuss every piece of evidence;"[54] instead, "[w]here . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [his] word.'"[55] Still, the ALJ is obligated to discuss (1) "the uncontroverted evidence he chooses not to rely upon,"[56] (2) "significantly probative evidence he rejects,"[57] and (3) the weight he assigns to medical sources, articulating their consistency and supportability with the record as a whole.[58]

Addressing Plaintiff's contentions, Plaintiff is incorrect that "no consideration was given" to Dr. Swaner's report.[59] The ALJ found Plaintiff has three severe mental impairments: somatic symptom disorder, panic disorder, and bipolar II disorder.[60] Dr. Swaner's report provides the support for these diagnoses.[61] From the inclusion of these impairments at step two, it is evident the ALJ not only considered Dr. Swaner's report, but found its conclusion persuasive, consistent, and supported by the record. Further, in the RFC assessment, the ALJ devoted a paragraph to Dr. Swaner's report.[62] The ALJ noted that Dr. Swaner evaluated Plaintiff and that Dr. Swaner

---

[51] *Barrett v. Astrue*, 340 F. App'x 481, 484 (10th Cir. 2009) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)) (alterations in original).
[52] *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)).
[53] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).
[54] *Id.* (citing *Vincent*, 739 F.2d at 1394–95).
[55] *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).
[56] *Grogan*, 399 F.3d at 1262 (quoting *Clifton*, 79 F.3d at 1010).
[57] *Id.* at 1262 (quoting *Clifton*, 79 F.3d at 1010).
[58] 20 C.F.R. § 404.1520c.
[59] Objection 7.
[60] R. at 14.
[61] *Id.* at 1999.
[62] *Id.* at 23.

diagnosed her with somatic symptom disorder, panic disorder, and bipolar II disorder.[63] He observed that Dr. Swaner did not provide a functional assessment of her mental abilities but rather had "only describe[ed] the claimant's performance on mental status exam at that time."[64] Because the ALJ incorporated the conclusions of Dr. Swaner's report and expressly discussed Dr. Swaner's report, it is clear the ALJ considered the content of Dr. Swaner's report.

Still, Plaintiff points to the sentence concluding the ALJ's discussion of Dr. Swaner's report: "Therefore, there is no opinion from Dr. Swaner to consider."[65] From this, Plaintiff seemingly argues this means the ALJ did not consider anything from Dr. Swaner's report in his decision. Specifically, she points to an observation repeated twice in Dr. Swaner's report—Plaintiff's self-report that she "has some difficulty with anxiety, primarily panic episodes in unfamiliar situations and with conflict"[66]—and argues that the ALJ should have but did not address this evidence.[67]

This court starts by observing that "opinion" is defined by the relevant Social Security Act regulations as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions."[68] Dr. Swaner did not opine on what Plaintiff can still do despite her impairments or whether Plaintiff has limitations or restrictions. In this context, the ALJ's statement that "there is no opinion from Dr. Swaner to consider" is fully consistent with the relevant regulatory definition of "opinion" and does not indicate that the ALJ did not consider Dr. Swaner's report. It is simply the ALJ's observation that Dr. Swaner did not provide an assessment of Plaintiff's

---

[63] R. at 23.
[64] *Id.*
[65] *Id.*
[66] *Id.* at 1998.
[67] Objection 6.
[68] 20 C.F.R. § 404.1513(a)(2).

limitations in his report. Further, the ALJ's discussion of Dr. Swaner's report is in a section of the RFC assessment that begins with the sentence "I have fully considered the medical opinions and prior administrative medical findings as follows[.]"⁶⁹ Again, "[w]here . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at [his] word.'"⁷⁰

Contrary to Plaintiff's assertion, the ALJ was under no obligation to expressly articulate how Plaintiff's self-reported symptoms contained within Dr. Swaner's report, consisting of a few sentences in an eight-page document, factored into the ALJ's RFC assessment. The ALJ is not under a duty to "discuss every piece of evidence." ⁷¹ Further, the ALJ did address Plaintiff's self-reported symptoms. The ALJ articulated that he found Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her mental] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."⁷² The ALJ did not have a further obligation to address each self-reported symptom from each medical source.

By highlighting one sentence—that there was no opinion from Dr. Swaner to consider—and arguing the ALJ should have specifically discussed one self-reported symptom, Plaintiff is contending not only that the ALJ should have found the symptom persuasive but that the symptom warranted further restrictions in Plaintiff's RFC. Put simply, Plaintiff is inviting this court to reweigh the evidence. But reweighing evidence is not within the purview of this court in its de novo review of a disability determination.⁷³ Due to the ample evidence in the decision that the ALJ considered Dr. Swaner's report, the court finds the ALJ considered this medical source,

---

⁶⁹ R. at 21.
⁷⁰ *Wall*, 561 F.3d at 1070 (quoting *Flaherty*, 515 F.3d at 1071).
⁷¹ *Clifton*, 79 F.3d at 1009–10 (citing *Vincent*, 739 F.2d at 1394–95).
⁷² R. at 18.
⁷³ *Trujillo*, 818 F. App'x at 839; *Oldham*, 509 F.3d at 1257.

contrary to Plaintiff's assertion that "all we can know for sure is that [the ALJ] did not consider Dr. Swaner's findings."[74]

### III. The ALJ Did Not Have an Obligation to Address a Purportedly Inferable Limitation of Absenteeism When There Was Substantial Evidence for the ALJ's Findings and Evidence of the "Inferred" Limitation Was Neither Uncontroverted nor Significantly Probative.

Plaintiff next contends that the ALJ should have found "some level of limitation" was tied to Plaintiff's panic disorder.[75] Specifically, Plaintiff alleges that absenteeism is "inferred" from the evidence that Plaintiff "has panic attacks and it is extremely difficult to leave her house."[76] Plaintiff contends that "the ALJ had an obligation to articulate a reason for excluding absenteeism from the RFC."[77]

As explained above, this court's review of the ALJ's decision is limited to whether it is supported by substantial evidence and whether the ALJ applied the correct legal standards.[78] The ALJ is only required to discuss "'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject."[79] None of the medical experts opined or otherwise found that Plaintiff would experience absenteeism. That Plaintiff feels that they should have, or that the ALJ should have inferred absenteeism would occur even though the medical experts did not say it would, does not create error.

---

[74] Objection 7.
[75] *Id.*
[76] R. at 18. *See also* Pl.'s Opening Br., ECF No. 28, at 13–14 (citing to Plaintiff's self-report that "it is extremely difficult to leave her house," Dr. Carlson's opinion "that [Plaintiff] would have a moderate limitation in her ability to complete a workday or workweek without psychological interruption," and "the Vocational Expert testi[mony] that even needing two additional 10-minute breaks in the workday would be work preclusive").
[77] Objection 7–8.
[78] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)).
[79] *Wall*, 561 F.3d at 1067 (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)).

Here, the ALJ's RFC assessment is supported by substantial evidence. The ALJ first noted Plaintiff alleged "she has panic attacks and it is extremely difficult to leave the house."[80] The ALJ then delved into Plaintiff's medical records, noting that her "mental health treatment records from 2016 to 2017 reflect some waxing and waning," but by June 2017, Plaintiff "was reportedly doing well" and "was reportedly stable."[81] The ALJ observed that in 2019 Plaintiff reported an increase in anxiety but that she took clonazepam as needed,[82] and that her "[m]ental status exams during the period at issue were typically unremarkable."[83] The ALJ noted that a consultant, Dr. Carlson, observed that although Plaintiff reported "occasional panic attacks," "she is able to drive, go out alone, shop in stores, manage money, watch documentaries, and make jewelry."[84] The ALJ highlighted that Dr. Carlson opined Plaintiff was "capable of sustaining concentration, persistence, and pace for two-hour periods across an eight-hour day/40 hour week in a setting that does not include high productivity requirements or strict deadlines." The ALJ noted Dr. Carlson found Plaintiff "retains sufficient residual capacity to perform and persist at instructions that can be learned in 1–3 months in an environment with low time and productivity pressure."[85]

After discussing this evidence, the ALJ concluded that "the limitations alleged by [Plaintiff] are not fully consistent with evidence of improved functioning with prescribed treatment; her activities of daily living; and the consistent, objective medical evidence available."[86] The ALJ then assessed that Plaintiff's RFC, "the most that [Plaintiff] is able to perform on a sustained and consistent basis," includes the performance of light work, with a

---

[80] R. at 18.
[81] *Id.* at 21.
[82] *Id.*
[83] *Id.*
[84] *Id.* at 22.
[85] *Id.*
[86] *Id.* at 21.

restriction that "she can perform and persist at work with instruction that can be learned in 1–3 months in an environment with low time and productivity pressures."[87] As detailed above, there is substantial evidence for this assessment.

Plaintiff points to two district court decisions[88] for the proposition that the ALJ should have inferred a limitation of absenteeism from Plaintiff's stated inability to sometimes leave home and then discussed its consequences on Plaintiff's RFC.[89] However, neither of those cases hold that there is a requirement to infer absenteeism when *no* medical expert has opined that the plaintiff has such a limitation.

In *Bonnie M. v. Kijakazi*, evidence in the record showed that the "plaintiff struggles to maintain a consistent schedule," that the plaintiff's mental limitations were particularly impactful on the plaintiff's absenteeism in the workplace, and that a medical expert "would infer [the] plaintiff's absences from work 'at least a few days a month' due to her impairments."[90] Similarly, in *Hafen v. Kijakazi*, the plaintiff's treating psychiatrist opined that the plaintiff's symptoms were severe enough that "[the p]laintiff would likely be absent from work four days or more per month as a result of his impairments and/or need for medical treatment."[91]

Here, in stark contrast, Plaintiff fails to identify any mention of absenteeism in the record. Instead, Plaintiff points to her self-report that "it is extremely difficult to leave her house," Dr. Carlson's opinion "that [Plaintiff] would have a moderate limitation in her ability to complete a workday or workweek without psychological interruption," and "the Vocational Expert

---

[87] R. at 17.
[88] *Bonnie M. v. Kijakazi*, No. 19-CV-0622-CVE-JFJ, 2021 WL 4823270 (N.D. Okla. Oct. 15, 2021); *Hafen v. Kijakazi*, No. 4:20-CV-00117-PK, 2021 WL 5141302 (D. Utah Nov. 4, 2021).
[89] Objection 7.
[90] 2021 WL 4823270, at *7.
[91] 2021 WL 5141302, at *3.

testi[mony] that even needing two additional 10-minute breaks in the workday would be work preclusive."[92]

This is not "uncontroverted evidence" of a limitation of absenteeism. Instead, it is simply an argument that the record could have been interpreted to support such a finding. As noted previously, reviewing courts are instructed to "neither reweigh evidence nor substitute our judgment for the Commissioner's."[93] Even if "the evidence may also have supported contrary findings, '[w]e may not displace the agency's choice between two fairly conflicting views.'"[94] Further, although Plaintiff highlights one piece of Dr. Carlson's opinion, she neglects another: Dr. Carlson's observation that Plaintiff's panic attacks were "occasional" and that Plaintiff was by no means housebound.

Nor are these parts of the record "significantly probative" of Plaintiff's alleged limitation of absenteeism: none of them articulate such a limitation, and at most, they permit a reasonable argument for one. Because evidence of a limitation of absenteeism was neither uncontroverted nor significantly probative, the ALJ was not under an obligation to discuss his reasons for excluding absenteeism from the RFC.

### IV. The ALJ Did Not Err in His Treatment of Dr. Carlson's Report When There Was No Conflict Between Dr. Carlson's Opinion and the RFC Assessment.

Plaintiff contends that the ALJ "did not account for" Dr. Carlson's finding that Plaintiff is "likely to have difficulty sustaining CP&P over an extended duration of time . . . due to her distractibility, sxs of hypomania, limited stress tolerance, and her focus upon and distress about her physical pain" or her opinion that Plaintiff can only "perform in an environment that d[oes]

---

[92] Pl.'s Opening Br., ECF No. 28, at 13–14.
[93] *Trujillo*, 818 F. App'x at 839 (citing *Hendron*, 767 F.3d at 954); *Oldham*, 509 F.3d at 1257.
[94] *Oldham*, 509 F.3d at 1257–58.

not include high productivity requirements or strict deadlines."[95] Plaintiff argues that this finding "conflicts" with the RFC assessment. Because the "RFC assessment conflicts with an opinion from a medical source," Plaintiff argues that "the adjudicator must explain why the opinion was not adopted."[96]

To the extent that Plaintiff relies on *Carver v. Colvin*[97] in support of this argument, the reliance is misguided. In *Carver*, the Tenth Circuit considered the components of a Mental Residual Functional Capacity Assessment ("MRFCA") form.[98] The court observed that Section I of the form is for "summary conclusions," where the consultant checks boxes indicating whether the claimant has a limitation within a category, and Section III is for the Functional Capacity Assessment in narrative form.[99] *Carver* reasoned that "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."[100] In other words, Plaintiff's block quote from *Carver* concerned the internal consistency, and therefore reliability, of a consultant's report. Here, Plaintiff does not contend that Dr. Carlson's narrative in the MRFCA failed to describe the effects of the Section I summary conclusions, nor does she assert that the ALJ should not have considered Dr. Carlson's MRFCA. Therefore, *Carver* is inapplicable.

Instead, Plaintiff alleges there is a conflict between the mental limitations noted by Dr. Carlson in the MRFCA and the ALJ's RFC assessment. Specifically, Plaintiff alleges that the

---

[95] Objection 11.
[96] *Id.* (citing SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996)).
[97] 600 F. App'x 616 (10th Cir. 2015) (unpublished).
[98] *Id.* at 618.
[99] *Id.* at 618–19.
[100] *Id.* at 619.

ALJ's RFC provides that Plaintiff "can perform and persist at work with interactions that can be learned in 1–3 months in an environment with low time and productivity pressures"[101] while Dr. Carlson's conclusion was that Plaintiff is unable to work in an environment with "high productivity requirements or strict deadlines."[102] Plaintiff argues that because of this purported conflict, the ALJ should have "explained [the] omission from the adopted restrictions."[103]

Plaintiff is incorrect that there is a "conflict" between the RFC assessment and Dr. Carlson's opinion. The RFC simply states in the inverse Dr. Carlson's description of Plaintiff's limitation. At most, the RFC assessment is arguably slightly more restrictive because it finds that Plaintiff is restricted to "low" time and productivity measures, rather than "not high." But to the extent this is a "variance," there is no actual conflict. Because there is no unexplained conflict between the MRFCA and the ALJ's findings, Plaintiff's argument fails.

---

[101] R. at 17.
[102] Objection 13.
[103] *Id.* at 11.

## ORDER

For the reasons discussed above,

IT IS HEREBY ORDERED that Plaintiff's Objection[104] to the Report and Recommendation is OVERRULED.

IT IS FURTHER ORDERED that the Report and Recommendation[105] affirming the Commissioner's decision is ADOPTED in all respects.

Signed August 24, 2022.

BY THE COURT

David Barlow
United States District Judge

---

[104] Objection, ECF No. 36.
[105] R. & R., ECF No. 35.